UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

CHARLES T. GERMANY

CRIMINAL ACTION

NO. 22-42-JWD-SDJ

## AMENDED RULING AND ORDER

This matter comes before the Court on the *Motion to Authenticate Recordings*, (Doc. 15), filed by Defendant Charles T. Germany ("Defendant"). The United States (sometimes referred to as "the Government") opposes the motion, (Doc. 20). No reply was filed. An evidentiary hearing was conducted on the motion on November 9, 2022. (Doc. 22.) The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendant's motion is granted and the Court finds that the recordings at issue are authentic and admissible at trial.

### I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

#### A. The Indictment

The Indictment alleges that on or about May 27, 2022, Defendant "knowingly transmit[ted] in interstate commerce from Walker, Louisiana, to Washington, D.C., a communication to S.M., a Member of Congress, containing a true threat to injure the person of another. . . ." (Doc. 10.) Defendant purportedly "left a voice message that stated, 'If I could get up there, I'd kill every one of you . . . . I'll kill you myself, you bitch[.]' " (*Id.*) The Indictment further pleads that Defendant acted "with the intent to communicate a true threat and with the knowledge that it would be viewed as a true threat." (*Id.*)

### B. The Charged Crime

Defendant is charged in a one count Indictment with transmitting threats through interstate communications in violation of 18 U.S.C. § 875(c). This statute provides, "Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." *Id.* The elements of this crime are:

> *First*: That the defendant knowingly sent [transmitted] a communication containing a threat to injure [kidnap] the person of another, as charged;
>
> *Second*: That the defendant intended his or her communication to be a threat or had knowledge that the communication would be viewed as a threat.
>
> *Third*: That the communication was sent in interstate [foreign] commerce.

*See* Fifth Circuit Pattern Jury Instructions, § 2.39 (2019) & corresponding Note (citing *Elonis v. United States*, 135 S. Ct. 2001 (2015)). The instructions continue, "A 'threat' is a serious statement expressing an intent to injure [kidnap] any person, which under the circumstances would cause apprehension in a reasonable person, as distinguished from mere idle or careless talk, exaggeration, or something said in a joking manner." *Id.*

### C. Briefing

In the instant motion, Defendant asks for a pre-trial hearing so that the Government can satisfy the requirements of *United States v. Biggins*, 551 F.2d 64 (5th Cir. 1977). (Doc. 15.) Defendant maintains that *Biggins* "established a test whereby the party introducing sound recordings must establish [a number of] facts[.]" (Doc. 15-1 at 1.) One of those facts is that "the speakers are identified." (*Id.*)

2

The Government responds that this case involves "two threatening telephone communications to U.S. Congresswoman Stephanie Murphy made on May 27, 2022, and recorded as voicemail messages." (Doc. 20 at 1.) The first VM was received around 9:49 a.m. and the second at 1:08 p.m. (*Id*.) The Government represents:

> The voicemail service is provided by Congressional Telecom System, which operates through AT&T. The recordings, ETM System call log, and Certification thereof will be placed into evidence at the authentication hearing. An agent will testify at the hearing to identify the defendant's voice and verify that the voicemail messages were left by the defendant.

(*Id*. at 1–2.) The remainder of the Government's briefing was (like Defendant's motion) devoted to the law governing authentication. (*Id.* at 2–6.)

### D. The Hearing

At the November 9, 2022, hearing of this matter, counsel for the Government advised that Defendant stipulated to authentication except as to the issue of voice identification. (Doc. 22.) Thus, the sole issue remaining to be decided was and is the identity of the speaker on the voicemail messages.

Special Agent Josue Saintiche of the FBI testified at the hearing on behalf of the Government. (*Id.*) He stated that the Capital Police traced the phone number of the individual who placed the call to Defendant's phone. Agent Saintiche further stated that he transported Defendant to the Livingston Parish Sheriff's Office ("LPSO") and conducted a voluntary twenty-minute interview with him. The agent could hear Defendant clearly during the interview, and during that exchange Defendant admitted that he was the individual speaking in the voicemail message.

## II.   LAW AND ANALYSIS

### A. Applicable Law

"To satisfy the requirement of authenticating or identifying an item of evidence, the

3

proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a); *see also United States v. Singh*, 922 F.2d 1169, 1174 (5th Cir. 1991) (applying Rule 901(a) in case involving tape recordings of conversations). "[C]onclusive proof of authenticity is not a prerequisite to the admissibility of disputed evidence." *Singh*, 922 F.2d at 1174 (citing *United States v. Lance*, 853 F.2d 1177 (5th Cir. 1988)).

"The court properly admits a sound recording into evidence only when the party introducing it carries its burden of going forward with foundation evidence demonstrating that the recording as played is an accurate reproduction of relevant sounds previously audited by a witness." *United States v. Biggins*, 551 F.2d 64, 66 (5th Cir. 1977). The Fifth Circuit has explained:

> To establish authenticity [of an audio recording], the Government must demonstrate: 1) the operator's competency, 2) the fidelity of the recording equipment, 3) the absence of material alterations, and 4) the identification of relevant sounds or voices. *See United States v. Biggins*, 551 F.2d 64, 66 (5th Cir. 1977); *United States v. Stone*, 960 F.2d 426, 436 (5th Cir. 1992). The party seeking to establish authenticity need not meet all the factors set out in *Biggins*, if ". . . upon independent examination, the district court is convinced that the 'recording accurately reproduces the auditory experience.' " *United States v. Buchanan*, 70 F.3d 818, 827 (5th Cir. 1995) (quoting *Stone*, 960 F.2d at 436). [The Fifth Circuit] reviews the district court's determination of authenticity of the recordings for abuse of discretion. *Id.*

*United States v. Green*, 324 F.3d 375, 379 (5th Cir. 2003) (the "*Biggins* factors"). Elaborating on this Court's discretion, the Fifth Circuit has also stated:

> Nevertheless, the trial judge has broad discretion in determining whether to allow a recording to be played before the jury. The standards for foundation evidence we adopt serve the paramount purpose of ensuring the accuracy of the recording. Strict compliance with the government's particularized burden is the preferred method of proceeding. If the trial judge independently determines that the recording accurately reproduces the auditory evidence, however, his discretion to admit the evidence is not to be sacrificed to a formalistic adherence to the standard we establish. If there is independent evidence of the accuracy of the tape recordings

4

> admitted at trial, we shall be extremely reluctant to disturb the trial court's decision even though at the time that decision was made the government had not carried its particularized burden of going forward.

*Biggins*, 551 F.2d at 66–67.

Finally, with respect to the last factor—identification of the relevant sounds or voices—Fed. R. Evid. 901(b)(5) provides:

> (b) **Examples**. The following are examples only — not a complete list — of evidence that satisfies the requirement: . . . (5) **Opinion About a Voice**. An opinion identifying a person's voice — whether heard firsthand or through mechanical or electronic transmission or recording — based on hearing the voice at any time under circumstances that connect it with the alleged speaker.

The Fifth Circuit has stated that "Fed. R. Evid. 901(b)(5) makes clear that the witness's familiarity with the voice sought to be identified, whether the familiarity developed before or after the time of the recording, is sufficient to ensure reliable voice identification." *Biggins*, 551 F.2d at 68. "A witness does not need to have a close relationship with the speaker; 'some familiarity' is sufficient." *United States v. Jones*, 873 F.3d 482, 495 (5th Cir. 2017) (citing *United States v. Thomas*, 690 F.3d 358, 372 (5th Cir. 2012) (quoting *United States v. Cuesta*, 597 F.2d 903, 915 (5th Cir. 1979)).

"A law enforcement agent may identify a voice with which he is familiar." *Id.* (citing *United States v. Norman*, 415 F.3d 466, 472 (5th Cir. 2005)). Identification of a voice by law enforcement can happen in a number of ways. *See id.* at 495–96 (finding agents identified voices "from personal experience;" the jail phone system, which identified the speaker as the caller; phone numbers of recipients; self-identification of the speaker or other speakers; discussions with government cooperators; knowledge of relevant events; and having "familiarized herself with appellants' voices by listening to hundreds of their phone calls," some repeatedly); *United States*

5

*v. Franklin*, 561 F.3d 398, 406 (5th Cir. 2009) (finding no error in identification of speaker who, after talking on phone with someone "requesting him to bring payment, . . . showed up with over $24,000 in cash"); *Green*, 324 F.3d at 380 (finding that agents were able to identify speaker because one had met defendant and both had "listened to each intercepted call and corroborated [defendant's] conversations with his actions on numerous occasions"); *Cuesta*, 597 F.2d at 915 (finding that *Biggins* requirements were met because, inter alia, agents identified relevant speakers "based on his conversations with them," based upon their references to each other by name and "also upon personal interviews with" defendants, and based on surveillance); *United States v. Mosquera-Castro*, No. 17-13, 2020 WL 5868464, at *6 (M.D. La. Oct. 1, 2020) (deGravelles, J.) (finding that identity of defendant's voice on wiretap recordings was established based on agent's face to face conversation with the defendant and agent's having "listened to some of the calls and corroborated Defendant's statements in the recordings by comparing his statements with his actions on numerous occasions").

### B. Analysis

Having carefully considered the matter, the Court finds that the Government met its burden of establishing the identity of the Defendant as the speaker in the recordings. Again, the sole witness at the hearing was Special Agent Saintiche , an impressive, credentialed FBI agent with a background in the National Security Agency. The agent testified that the Capital Police traced the phone number of the individual who placed the call to Defendant's phone. Special Agent Saintiche also testified that he spent time with Defendant transporting him to the LPSO and conducting a voluntary twenty-minute interview with him. The agent could hear Defendant clearly during the interview, and during that exchange Defendant admitted that he was the individual speaking in the voicemail message. Based on all of this information, the agent identified Defendant as the speaker

6

in the messages. The Court observed Special Agent Saintiche testify and found him to be highly credible.

Considering his review of the voicemail, his interview with Defendant, Defendant's admission, and the above legal authorities, the Court has little difficulty concluding that Special Agent Saintiche has sufficient familiarity with Defendant's voice so as to identify him as the speaker in the recordings. Consequently, the Court finds that the recordings will be admissible at trial.

### III. Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion to Authenticate Recordings*, (Doc. 15), filed by Defendant Charles T. Germany is **GRANTED**, and the Court finds that the recordings at issue are authentic and admissible at trial.

Signed in Baton Rouge, Louisiana, on December 12, 2022.

 _____
 **JUDGE JOHN W. deGRAVELLES**
 **UNITED STATES DISTRICT COURT**
 **MIDDLE DISTRICT OF LOUISIANA**